**IT IS ORDERED as set forth below:**

**Date: September 29, 2017**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: | CASE NUMBER: |
| **RICHARD ADAM HIGGINS**, | **14-58597-PMB** |
| Debtor. | CHAPTER 13 |

## ORDER DENYING MOTION TO DECLARE DEBTS NONDISCHARGEABLE

The Debtor confirmed his *Second Amended Chapter 13 Plan* in this case (the "Original Confirmed Plan")(Docket No. 52) on January 5, 2015 (see Docket Nos. 64 and 65). On December 30, 2015, the Debtor proposed a modification to the Original Confirmed Plan to increase the plan payments from $2,200 per month to $2,404 per month (Docket No. 81). That modification was approved on February 4, 2016 (Docket No. 84). The Original Confirmed Plan as so modified (the "Amended Plan") called for a monthly payment by the Debtor to the Chapter 13 Trustee (the "Trustee") of $2,404, and provided for a zero percent (0%) dividend to general unsecured creditors.

On December 15, 2014, counsel for the Debtor (the "Debtor's Attorney") was approved by this Court as special counsel to represent the Debtor in a state court lawsuit to alter his alimony

obligations to Lee Ann Higgins, the Debtor's ex-wife ("Ms. Higgins")(Docket No. 59).  On September 29, 2016, the Debtor's Attorney filed an Application for Compensation (Docket No. 93) related to those services.  That Application was subsequently amended on October 31, 2016 (Docket No. 103)(the original Application, as so amended, the "Fee Application").  On October 13, 2016, the Debtor filed a proposed modification to the Amended Plan (Docket No. 95).  That proposed modification was amended on December 27, 2016 and January 13, 2017 (Docket Nos. 111 and 115)(the proposed modification, as so amended, the "Plan Modification").  The Trustee filed responses to the Fee Application and the Plan Modification on October 19, 2016, and November 7, 2016 (Docket Nos. 98, 104 and 105).  Ms. Higgins also filed responses to the Fee Application and the Plan Modification on November 9, 2016, November 28, 2016, and January 30, 2017 (Docket Nos. 106, 107 and 120)(all of the foregoing responses, collectively, the "Responses").

Pursuant to the *Order and Notice Rescheduling Evidentiary Hearing on Application for Compensation for Debtor's Counsel and on Debtor's Proposed Post-Confirmation Plan Modification of Chapter 13 Plan of Reorganization* dated January 17, 2017 (Docket No. 116), the Court held an evidentiary hearing on the Fee Application, the Plan Modification, and the Responses on February 6, 2017 at 2:00 p.m. (the "Hearing").  At the Hearing, the Debtor, the Debtor's Attorney, Ms. Higgins, counsel for Ms. Higgins, and counsel for the Trustee appeared.  Certain documents were admitted into evidence at the Hearing.  The Debtor was the only witness to testify at the Hearing; although she was present, Ms. Higgins did not testify at the Hearing.

In the Fee Application, the Debtor's Attorney requested that the Court approve $33,470 in attorneys' fees to be paid to Debtor's Attorney in his role of special counsel to the Debtor in connection with litigation to reduce the Debtor's ongoing domestic support obligation to Ms.

Higgins. The Fee Application alleged that the Debtor's Attorney successfully represented the Debtor in Cherokee County Superior Court in the Fall of 2016 and reduced the ongoing obligation of the Debtor to Ms. Higgins from $1,400 per month to $0 per month, making approximately $60,000 of the Debtor's disposable income available to be paid to his creditors. The Debtor and Ms. Higgins have been parties to continuous litigation regarding the Debtor's domestic support obligations since before the Debtor filed this case (generally, the "DSO Litigation").

In the Plan Modification, the Debtor proposed (i) to increase his monthly payments to $3,048, and (ii) to pay the fees and expenses sought in the Fee Application by adding to the Amended Plan an administrative expense claim for Debtor's Attorney in the amount of $15,000, with the remainder of the fees sought in the Fee Application ($24,500) to be added to the pool of general unsecured creditors of the Debtor. The Plan Modification also proposed to amend the Amended Plan to increase the payments to the general unsecured creditors from $0 to a pro rata share of $19,500.

In the Responses, Ms. Higgins alleged that the Debtor has committed bankruptcy fraud, as defined in 18 U.S.C. § 152(1) & (2), in this case, and requested, *inter alia*, that this case be dismissed and/or the debts owed to Ms. Higgins and/or all of the Debtor's creditors be declared nondischargeable. More specifically, Ms. Higgins alleges that the Debtor failed to disclose his ownership on May 1, 2014 (the "Petition Date") of a 2014 Ford Mustang[1] and a jet ski (the Mustang and the jet ski, collectively, "Undisclosed Assets"). Ms. Higgins further alleges the Undisclosed Assets were included on a domestic relations financial affidavit that the Debtor provided to Ms. Higgins in February 2014, three (3) months prior to the Petition Date. The Debtor

---

[1] The Debtor obtained the Mustang by trading-in a pickup truck. In that transaction, the Debtor obtained the Mustang and $4,300 in cash in return for the pick-up. The sale of the pickup truck was disclosed on the Statement of Financial Affairs filed by the Debtor, Question #10, Docket No. 13, at *29.

- 3 -

amended his schedules in this case to include the Undisclosed Assets on October 13, 2016 (Docket No. 96), at the same time he filed the Fee Application and the Plan Modification. At the Hearing, the Debtor testified that the omission of the Mustang and the jet ski from his schedules was inadvertent, and that the omission of the jet ski was irrelevant because it was not in operating condition on the Filing Date and had not been used for years.

After the Hearing, the Court entered an Order (Docket No. 122)(the "Prior Order") approving the Fee Application and the Plan Modification (the Amended Plan, as modified by the Plan Modification and the Prior Order, the "Plan"),[2] denying Ms. Higgins' request to dismiss this case, and allowing the parties to submit briefs on (i) Ms. Higgins' request to declare the debts in this case (or just the Debtor's debts to her) to be nondischargeable and (ii) whether the Plan should be further modified based on, among other things, the value of the Undisclosed Assets on the Petition Date. In follow-up to the Prior Order, Ms. Higgins submitted a brief on February 17, 2017 (Docket No. 124) ("Ms. Higgins' Brief"), and the Debtor submitted a response brief on March 3, 2017 (Docket No. 125) (the "Debtor's Brief").

In Ms. Higgins' Brief, she argues that the Debtor's failure to disclose and properly value the Undisclosed Assets constitutes fraud and warrants declaring all the debts in this case, or at a minimum the debts owed to her,[3] to be nondischargeable. In support of this request, Ms. Higgins

---

[2] Per an agreement with Ms. Higgins in resolution of her objection to the Plan Modification, the balance of the fees that are not a priority claim will not be paid as an unsecured claim pursuant to the Plan. See Prior Order, p. 3.

[3] Ms. Higgins filed four (4) proofs of claim in this case, Claim Nos. 10-13. Claims 10-12 are claims for domestic support obligations totaling approximately $19,000. The Debtor did not object to any of these three (3) claims, and all are included in the Amended Plan. At the Hearing the Trustee reported that those three (3) claims had been paid in full pursuant to the Amended Plan. Claim No. 13, in the approximate amount of $37,000, was filed as a priority claim, but was determined by final Order of this Court after an objection by the Debtor to be a general unsecured claim (Docket No. 60). This claim remains outstanding and is presumably the claim that Ms. Higgins wishes to have declared nondischargeable. However, in addition to the reasons set forth herein, the Court does not believe that it would be appropriate to declare this claim to be nondischargeable since Ms. Higgins did not request this relief, or even mention any issues with the Undisclosed Assets, during the earlier litigation over this claim, even though she knew of these issues at that time.

cites Torres Martinez v. Arce (In re Torres Martinez), 397 B.R. 158 (B.A.P. 1st Cir. 2006), In re Thomas; 337 B.R. 879 (Bankr. S.D. Texas 2006); King Louie Mining, LLC v. Comu (In re Comu), 2014 WL 3339593, 2014 Bankr. LEXIS 2969, Bankr. Case No. 09-38820-SGJ-7, Adv. Proc. No, 10-3269-SGJ (Bankr. N.D. Texas July 8, 2014); In re Casseday, 2012 WL 2803725, 2012 Bankr. LEXIS 3119, Bankr. Case No. 11-32738 (Bankr. W.D.N.C. July 10, 2012); and In re Stoller, 351 B.R. 605 (Bankr. N.D. Ill. 2006) in Ms. Higgins Brief. [4]

In the Debtor's Brief, the Debtor argues that the cases cited by Ms. Higgins are inapposite, and that the Debtor is entitled to a discharge if he completes his Plan payments. He also argues that Ms. Higgins should not obtain the relief that she seeks because of her delay in raising the issues regarding the Undisclosed Assets and due to her litigation tactics in the DSO Litigation.

As outlined in further detail below, the Court does not believe that Ms. Higgins is entitled to the relief that she seeks. 11 U.S.C. § 1328 outlines when a debtor is entitled to a discharge. 11 U.S.C. § 1328 contains certain exceptions to discharge. None of the exceptions apply to these facts. To the extent that fraud by the Debtor might permit the Court to create an additional exception pursuant to 11 U.S.C. § 105, the Court does not believe that fraud has been proven here. Finally, even if the Court could create an exception and there was a factual basis to do so, the Court does not believe that it would be appropriate to exercise that discretion in this case at the request of Ms. Higgins. Ms. Higgins was aware of the alleged nondisclosures prior to the confirmation of the Original Confirmed Plan but chose, for whatever reason, not to raise them in connection with confirmation of the Original Confirmed Plan, the prior modification to the Original Confirmed Plan or the Debtor's objection to her claim. Instead, she waited over two (2) years before bringing

---

[4] Ms. Higgins did not in Ms. Higgins' Brief make any request that the Amended Plan, as modified by the Plan Modification, be further amended to require the Debtor to pay additional value for the Undisclosed Assets. The Court interprets that omission as an abandonment by Ms. Higgins of any complaint with regard to the valuation of the Undisclosed Assets by the Debtor.

- 5 -

them to light. This delay calls into question the good faith of Ms. Higgins in raising this issue, and operates to the great prejudice of the Debtor, who has made substantial payments under his confirmed Amended Plan in the interim. Under those facts the Court does not believe it would be appropriate to impair the Debtor's discharge at Ms. Higgins' request.

## DISCUSSION

This Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this Court under 28 U.S.C. § 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

All of the relief sought in the Fee Application and the Plan Modification, and most if the relief sought in the Responses, was addressed in the Prior Order. The only remaining question before this Court is whether the all debts in this case (or the debts owed to Ms. Higgins) should be declared nondischargeable as a result of the belated disclosure by the Debtor of the Undisclosed Assets, the value of which has now been accounted for in the Plan.[5]

Exceptions to discharge should be narrowly and strictly construed. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986), abrogated by Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (on the grounds that the standard of proof for fraud is preponderance of evidence, not clear and convincing as was held in Hunter). The burden of proof is on the party seeking denial of the discharge. Hunter, 780 F.2d at 1579 (citing Danns v. Household Finance Corp., 558 F.2d 114 (2d Cir. 1977); see also Federal Rule of Bankruptcy Procedure ("FRBP") 4005.

### *11 U.S.C. § 1328 Does Not Provides a Basis for Denial of Discharge in this Case*

11 U.S.C. § 1328 describes when a Chapter 13 debtor is entitled to a discharge. 11 U.S.C. § 1328(a) states as follows: "Subject to subsection (d), as soon as practicable after completion by

---

[5] The $19,500 being paid to general unsecured creditors, including Ms. Higgins, under the Plan represents roughly the value of the Mustang (and, to the extent it had value, the jet ski) on the Filing Date.

- 6 -

the debtor of all payments under the plan . . . the court *shall grant* the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt– . . ." 11 U.S.C. § 1328(a)(emphasis added). The rest of 11 U.S.C. § 1328(a) describes certain types of debts that are not eligible for a discharge, including debts (i) incurred as a restitution for a crime or criminal fine, (ii) that are otherwise nondischargeable under specific portions of 11 U.S.C. §§ 507, 523, (iii) for certain types of taxes, and (iv) incurred as restitution or damages awarded in civil trial for willful or malicious injury. 11 U.S.C. § 1328(a)(1)-(4). None of the debts in this case fall into those categories, and Ms. Higgins does not assert that they do. 11 U.S.C § 1328 also contemplates the possibility of denying a discharge (i) if a debtor has previously received a discharge, (ii) if a debtor has failed to complete a financial management course, (iii) if the debtor has been convicted of a felony that demonstrates the case was filed in bad faith, (iv) as a civil remedy under 18 U.S.C. § 1964, or (v) if a debtor has committed various violations of federal securities laws. 11 U.S.C. § 1328(f)-(h). None of these provisions are applicable to this case, and Ms. Higgins does not assert that they are. The only basis that Ms. Higgins cites for the relief she seeks is the power granted to the Court under 11 U.S.C. § 105.[6]

*Use of 11 U.S.C. § 105 To Override 11 U.S.C. § 1328*

11 U.S.C. § 105 cannot be applied in contradiction of any other section of the Bankruptcy Code. Law v. Siegel, 571 U.S. ___, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014). If the Debtor completes his payments under the Plan, 11 U.S.C. § 1328 requires the Court to issue a discharge

---

[6] To the extent that Ms. Higgins seeks the denial of a discharge on the basis that the Debtor committed bankruptcy fraud as defined in 18 U.S.C. § 152, such relief is not available to Ms. Higgins. As a threshold matter, it is not clear that 18 U.S.C. § 152 creates a private right of action. See Bloomberg Law: Bankruptcy Treatise, Pt. IX, Ch. 273(II) (D. Michael Lynn et al. eds., 2016) (citing Edwards v. LVNV Funding, LLC (In re Edwards), 539 B.R. 360, 367 (Bankr. N.D. Ill. 2005); BGC Partners, Inc. v. Avison Young (Canada), Inc., No. 15-cv-00426 (CRC), 2015 WL 233692, at *3 (D.D.C. July 22, 2015); In re DeRosa-Grund, 544 B.R. 339, 386 (Bankr. S.D. Tex. 2016)). However, the Court does not need to reach that legal issue since, as noted elsewhere, the Court does not believe that the Debtor's nondisclosures were intentional, and thus they could not constitute fraud in the first place.

in this case unless this case falls into one of the specifically enumerated exceptions to discharge provided for in 11 U.S.C. § 1328.  Thus, it is not clear that the Court could use 11 U.S.C. § 105 to create a separate basis for denial of a discharge.

Ms. Higgins cites to Thomas, *supra*, for the proposition that 11 U.S.C. § 105 allows for the revocation of confirmation outside of the 180-day window of 11 U.S.C. § 1330, when based upon fraud of the debtor.  See Ms. Higgins' Brief at *1-2 (citing to Thomas, 337 B.R. 879).  This Court finds that Thomas is distinguishable from the facts in this case.

First, Thomas was decided prior to Law v. Siegel, in which the Supreme Court held that 11 U.S.C. § 105 cannot be used to override an explicit section of the Bankruptcy Code.  Second, the false representation in Thomas was a deliberate understatement of the actual debt owed to a creditor, the Internal Revenue Service (the "IRS").  Thomas, 337 B.R. at 886-87.  The misrepresentation in Thomas was made *intentionally*; the debtor chose to understate the claim rather than list the full claim amount and mark as disputed because the debtor knew he would not otherwise be able to propose a confirmable plan.  Id. at 888 (as was asserted in the case: "I was trying to obviously get jurisdiction over [the IRS] to make sure something did not survive the Chapter 13 discharge.") (citation omitted).  The Thomas Court explicitly found that both the debtor and debtor's counsel were fully aware that the debtor was falsely representing the amount of the claim.  Id. at 886.

In contrast, the Court does not believe that the Debtor *intentionally* misled the Court.  Instead, it appears that the omission was inadvertent.  Supporting that notion is the fact that the Debtor referenced the transaction in which he exchanged his truck for the Mustang in his Statement of Financial Affairs (Docket No. 1).  If the Debtor were truly trying to conceal that asset, it does not seem likely that he would have made the disclosure on the Statement of Financial Affairs.

Further, his testimony on the inadvertence of the nondisclosure was credible.  As to the jet ski, the Debtor provided credible uncontroverted testimony that it was inoperable, had been for some years, and had negligible value.  The Debtor asserted, and the Court finds it credible, that he simply did not understand that the Undisclosed Assets needed to be on his Schedule B.  Further, Debtor's Attorney argued that the moment the attorney discovered that the Undisclosed Assets had not been disclosed, he filed amended schedules.  This amendment occurred before Ms. Higgins had filed any pleadings in this case regarding the Undisclosed Assets.[7]

### *Comu*, *Casseday*, and *Stoller* Are Inapposite

Ms. Higgins also alleges in her brief that the Debtor lied to the Court in his *Motion to Retain Tax Refund* (Docket No. 87), filed on May 2, 2016 (the "Motion to Retain").  She compared this deception to Comu, in which the court found in revoking a Chapter 7 discharge that the debtor concealed assets and made numerous false statements under oath with fraudulent intent.  See, generally, Comu, 2014 WL 3339593.

Comu is distinguishable from the case at bar in numerous respects.  First, and critically, Comu was a Chapter 7 case, and the revocation of the discharge was under 11 U.S.C. § 727, which is inapplicable this Chapter 13 case.  Id. at *1 & 7.  11 U.S.C. § 1328 contains no comparable provision.  Second, the party seeking the revocation of the discharge also asserted that the debt to it was nondischargeable under 11 U.S.C. § 523 as a debt that was procured by fraud.  Id.  Ms. Higgins has not alleged that the debt owed to her was the result of fraud.  Third, the court made a

---

[7] Ms. Higgins spends considerable time in Ms. Higgins' Brief on arguments about whether Ms. Higgins can have confirmation revoked.  That is not relief that Ms. Higgins has sought in this case (she sought dismissal and seeks exception from discharge), likely because it is clear that Ms. Higgins is out of time to have confirmation revoked for fraud  See 11 U.S.C. § 1330.  The possibility of confirmation revocation was relevant when the Court was considering Ms. Higgins' motion to dismiss, because there is some question as to whether a party can seek to have a case dismissed for what are effectively grounds to have confirmation revoked for fraud (if timely asserted).  The Court, having already denied Ms. Higgins' motion to dismiss in the Prior Order, will not address the arguments related to revocation (or the Torrez-Martinez case, *supra*) in this Order.

- 9 -

specific finding that the debtor concealed assets that were not discovered until after the discharge was granted, whereas in this case, Ms. Higgins knew about the Undisclosed Assets prior to the Filing Date. Id. at 7-8 ("There is ample evidence that Plaintiffs and Trustee did not know the true facts pertaining to [the debtor]'s false oaths and undisclosed assets until after the Discharge Date.").

Finally, as related to Ms. Higgins' assertion that the Debtor lied in the Motion to Retain, that motion only alleged that (i) the Court has jurisdiction; (ii) venue is proper; (iii) the matter is a core proceeding; (iv) the Debtor filed for bankruptcy (v) the Debtor confirmed a 0% plan on October 4, 2011; (vi) the Debtor received a 2015 tax refund of $4,507; and (vii) he needed to use that refund to purchase an air conditioning unit for his household, invoiced at $4,450. Other than the (likely typographical) error as to the confirmation date, it is not clear what Ms. Higgins is referring to as a lie. Ms. Higgins has not asserted or proved that any specific allegation in the Motion to Retain is not true. Based on all of the above, this case is distinguishable from Comu.

Next, Ms. Higgins cited to Casseday, *supra*, which held that a debtor's failure to provide complete and accurate information about her assets resulted in the denial of claimed exemptions as a sanction. Notably, the court did not deny the debtor a discharge nor dismiss the case, as Ms. Higgins is seeking here. Ms. Higgins did not move for the denial of an exemption in any of the Undisclosed Assets. Casseday does not provide a basis for the relief sought by Ms. Higgins.[8]

Finally, Ms. Higgins compared this case to Stoller, *supra*, in which the court converted the debtor's Chapter 13 case to a Chapter 7 case on the basis of false statements, misleading information and omitted facts. Stoller, 351 B.R. at 605. As in Casseday, the court in Stoller did

---

[8] It is also not clear that Casseday remains good law after Law v. Siegel, *supra*.

- 10 -

not deny the debtor a discharge or dismiss the case. Ms. Higgins has not moved for this case to be converted to a Chapter 7 case. <u>Stoller</u> does not provide a basis for the relief sought by Ms. Higgins.

***Laches***

Finally, even if the Debtor's omissions in this case did rise to the level of fraud, which this Court find they do not, Ms. Higgins would not be entitled to the relief she is seeking because she did not timely object to confirmation of the Original Confirmed Plan or otherwise raise these issues in a timely fashion. Though not specifically pled by the Debtor, the defense of laches clearly applies in this case. The defense of laches requires an inexcusable delay in the exercise of a known right and prejudice to other parties as a result of such delay. <u>In re Cabral</u>, 2012 WL 8441317, Case No. 12-12050-A-12, at *1 (Bankr. E.D. Cal. Oct. 10, 2012).

According to the Responses and the arguments made at the Hearing, Ms. Higgins was aware of the Undisclosed Assets as early as February 2014 through domestic relations financial affidavits submitted in the state court proceedings regarding spousal support. In Ms. Higgins' Brief, she argues that she was not aware that the Undisclosed Assets had not been included on the Debtor's schedules until the Fee Application and the Plan Modification were filed, but reviewing the Debtor's initial filing, Ms. Higgins is included on the original creditor's matrix. There has been no allegation made that the address listed for her was incorrect or incomplete, or that she has failed to receive service in this case. She also argued that even if she had been aware that the Undisclosed Assets had not been included on the Debtor's initial schedules, she did not realize the importance of such omission. Although it is unclear exactly when Ms. Higgins' current counsel was retained, based on Proofs of Claim #10-13, filed on July 1, 2014, it is clear that Ms. Higgins' counsel was retained no later than that date. The Original Confirmed Plan was not confirmed until January 5, 2015, so Ms. Higgins' counsel was involved in the case for at least six (6) months prior

- 11 -

to confirmation. It was then incumbent on her to raise a timely objection. She did not. Any delay on her part is not an excusable delay.

As for prejudice, had Ms. Higgins raised these issues in connection with confirmation, and had confirmation then been denied, or the case dismissed, the Debtor would have avoided making thousands of dollars in payments under the Original Confirmed Plan and the Amended Plan, much of which went to Ms. Higgins. The delay by Ms. Higgins in exercising her rights clearly operated to the prejudice of the Debtor.

***Other Bases for Denial of Discharge Asserted by Ms. Higgins***

To the extent that Ms. Higgins' Brief asserts that the modified plan did not comply with 11 U.S.C. § 1325(a)(1), (3), and (4), this Court has already found that the Plan Modification complies with the Bankruptcy Code. The Court has evaluated the merits of it and the arguments made by Ms. Higgins in the Responses and at the Hearing, and approved the Plan Modification in the Prior Order, and will not reconsider whether it complies with the Bankruptcy Code.

To the extent that Ms. Higgins has moved for attorneys' fees and costs, because the other relief she is seeking is being denied, such request is also denied.

Accordingly, in light of the foregoing, it is

**ORDERED** that the relief sought in the Responses and Ms. Higgins' Brief, seeking that the debts owed to Ms. Higgins be declared non-dischargeable, is **DENIED**. It is further

**ORDERED** that the relief sought in the Responses and Ms. Higgins' Brief, seeking that all the debts owed in this case be declared non-dischargeable, is **DENIED**. It is further

**ORDERED** that Ms. Higgins' request for attorneys' fees and costs is **DENIED**.

- 13 -

The Clerk is directed to serve a copy of this Order upon the Debtor, Debtor's Counsel, Ms. Higgins, Ms. Higgins' Counsel, the Chapter 13 Trustee, the Acting United States Trustee, all creditors, and all parties requesting notice in this case.

**[END OF DOCUMENT]**